UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 11-20039-CV-HUCK/BANDSTRA

CANADIAN STEEL FABRICATORS, LTD.,

        Plaintiff,

v.

LAYNE GARNER, et al.,

        Defendants.
_____/

ORDER OF DISMISSAL FOR LACK OF PERSONAL JURISDICTION

THIS MATTER is before the Court on Defendants' Motion to Dismiss For Lack of Personal Jurisdiction. D.E. #10. For the reasons discussed below, the Court grants the motion to dismiss.

I.     Background

On January 5, 2011, Plaintiff, a Canadian-based company with fabrication facilities and/or offices in, among other places, Miami, Florida, filed a Complaint against Defendant Layne Gardner, a resident of California who conducts business in California, and Defendant Metal Recovery, LLC, a California company owned by Layne Gardner that is located and conducts business in California. D.E. #1. The Complaint alleges five causes of action: fraud in the inducement, intentional misrepresentation/fraudulent misrepresentation, negligent misrepresentation, common law fraud and conversion. *Id*. Plaintiff only alleges in the complaint[1] that Defendants had one contact with the State of Florida: Defendants allegedly shipped a sample of ore they claimed contained Rhodium from California to Florida after requesting that Plaintiff test the ore at a metal refinery in Florida. *Id*. Allegedly, Defendants falsely proclaimed that the ore was worth $80,000. After the ore was tested and discovered

---

[1] In subsequent pleadings described herein, Plaintiff alleges additional contacts with Florida including payments from Plaintiff to Defendant originating in Florida over a six month period, Defendants' offer to sell and deliver precious metal to Plaintiff in Florida, Plaintiff's delivery of "Florida-based" equipment to California, Plaintiff's set up in California of a "Florida engineered" recovery system, entrustment of Defendant's ore sample with Plaintiff in Florida and Defendant's offer to sign a 99 year lease with Plaintiff for property in California.

1

to be devoid of Rhodium and therefore worthless, Defendants allegedly accused Plaintiff of removing the Rhodium from the ore sample and, in retaliation for this belief, commandeered Plaintiff's equipment in California worth over $350,000. Plaintiff requested $1,097,751.67 in general damages for this act and a series of alleged misrepresentations that purportedly induced Plaintiff to invest several hundred thousand dollars in capital improvements and to ship the above-referenced equipment to California. *Id*.

On April 1, 2011, Defendants filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. D.E. #10. Defendants claimed that Plaintiff failed to sufficiently plead a basis for specific or general long-arm jurisdiction over Defendants and that Plaintiff failed to properly serve Defendants. *Id*. In addition, Defendants filed an affidavit of Defendant Layne Gardner stating, *inter alia*, that "all alleged activities involved in this litigation occurred in the State of California," that none of the Defendants have "conducted any substantial activity within the State of Florida" and that the Defendants do not have a residence in Florida, do not own real or personal property in Florida, do not have facilities and/or offices in Florida, have never sold or leased any real or personal property in Florida, have never conducted any personal business within Florida and do not maintain bank accounts in Florida. *Id*.

On July 26, 2011, Plaintiff filed a response to Defendants' motion to dismiss for lack of personal jurisdiction. D.E. #27. In addition to the shipment of ore from California to Florida, the Plaintiff identified two other contacts with the state of Florida: "a series of Florida derived payments given to Defendants over a six (6) month period" and Defendants' "solicitation to sell and deliver precious metal ore into Florida for purchase or sale by the Florida Plaintiff from the out-of state mines." *Id*. Plaintiff also augmented many of the averments in its Complaint with additional language noting, *inter alia*, that the equipment it sent to California was "Florida-based," that the recovery system it set up in California was "Florida engineered" and that the funds it paid to the Defendants in California came from its "Florida location." *Id*. As its basis for asserting long-arm jurisdiction over the Defendants under Florida's long-arm statute, *Fla. Stat. § 48.193*, the Plaintiff cited one subsection of the statute: subsection (1)(f)2, *Fla. Stat. § 48.193(1)(f)2*. *Id*. Plaintiff also implied, but did not cite, a basis for long-arm jurisdiction under subsections (1)(f)1, *Fla. Stat. § 48.193(1)(f)1* ("solicitation to sell and deliver metal ore into Florida"), and (1)(b), *Fla. Stat. § 48.193(1)(b)* ("injury . . . was caused within the state when the test results demonstrated the ore to be virtually worthless"). *Id.* As of July 26, 2011, Plaintiff did not produce any evidence supporting jurisdiction in response to the affidavit Defendants presented challenging jurisdiction. *Id.*

2

On July 29, 2011, the Defendants filed a reply to Plaintiff's response. D.E. #28. They asserted, *inter alia*, that Plaintiff failed to allege sufficient facts to implicate any subsection of Florida's long-arm statute and that Plaintiff failed to meet their required evidentiary burden of proof in any event. *Id.* In addition, they asserted that Plaintiff's failure to allege personal injury or property damage in Florida under subsection (1)(f) of Florida's long-arm statute makes both parts of sub-section (1)(f) inapplicable. *Id.* They also asserted, *inter alia*, that Plaintiff's sole allegation of a tortuous act under subsection (1)(b) of Florida's long-arm statute – that the metal ore sent to the Miami facility was found to be worthless – "is not tortuous in nature." *Id.* In addition, they continued to oppose general jurisdiction under paragraph (2) of the Florida long-arm statute. *Id.*

On August 4, 2011, the Plaintiff filed a Sur-Reply (D.E. #32) to Defendants' reply. By providing seven exhibits, Plaintiff's Sur-Reply sought to address Defendants' argument that Plaintiff did not meet its evidentiary burden of proof. In addition, Plaintiff explicitly asserted long-arm jurisdiction under *Fla. Stat. § 48.193(2)* on the basis that, "[t]he act of opening the doors to the allegedly owned real property to Floridians and equipment is a substantial activity because it compromised Lane Gardner's entire facility for their use to foster his fraudulent scheme, and his act of reaching into the Forum by shipping $80,000 worth of ore to Florida was not an isolated event, because it was part an aggregate of events which furthered a long-term relationship that Mr. Lane Gardner cultivated for the purpose of profiting from his Floridian guests." D.E. #32. Plaintiff also sought to show contacts with Florida beyond economic damages: "Ore shipments, Ore entrustment, Florida Based Equipment being sent out of the forum state, Defendant's offer to sign a 99 year lease at the fraudulently misrepresented 'Gardner Facility', and other contacts establishing Long Term Substantial Connections with the Forum State of Florida." D.E. #32.

On August 18, 2011, the Defendants filed their Sur-Sur Reply (D.E. #40). They challenged, *inter alia*, the evidence presented by the Plaintiff.

**II.     Discussion**

    **A.     Burdens of Proof**

A plaintiff who asks a court to exercise personal jurisdiction over a nonresident defendant has the initial burden of alleging in the complaint facts that are sufficient to support a prima facie case of jurisdiction. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). If the defendant challenges jurisdiction by submitting an affidavit in support of its position, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Diamond Crystal Brands, Inc. v. Food Movers International, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010); *Posner v. Essex Insurance Co., 178*

3

*F.3d 1209, 1214* (11th Cir. 1999). Where the complaint and supporting evidence conflict with the facts as alleged in the defendant's affidavits, "the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands*, 593 F.3d at 1257; *Abramson v. Walt Disney Co.*, 132 Fed. Appx. 273, 275 (11th Cir. 2005).

      B.      **Personal Jurisdiction Analysis**

Defendants move to dismiss for lack of personal jurisdiction. *See Fed R. Civ. P. 12(b)(2)*. A federal court sitting in diversity must undertake a two-step analysis to determine whether personal jurisdiction exists: (1) the exercise of jurisdiction must be appropriate under the state's long-arm statute, and (2) the court's exercise of jurisdiction must comport with the requirements of the *Due Process Clause of the Fourteenth Amendment. Mazer, 556 F.3d at 1274*. The reach of the Florida long-arm statute is a question of Florida law; therefore, this Court must construe it as this Court believes the Florida Supreme Court would. *Virgin Health Corp. v. Virgin Enters. Ltd.,* 393 Fed. Appx. 623 (11th Cir 2010). In the absence of authority from the Florida Supreme Court, this Court must look to the Florida district courts of appeal. *Id.* The available jurisdictional facts indicate that the Court may not assert jurisdiction over Defendants since Plaintiff has failed to meet its initial burden of alleging in the complaint (and in its subsequent pleadings) facts that are sufficient to support a prima facie case of jurisdiction. As a result, the Court need not address the evidence submitted to support jurisdiction nor the issue of whether service of process was proper in this case.

    1. **Florida Long-Arm Statute**

        *(a) Specific Jurisdiction*

Plaintiff contends that the Court has specific jurisdiction over Defendants under subsection (1)(f)2 of the Florida long-arm statute. *Fla. Stat. § 48.193(1)(f)2.* This Court also considers whether specific jurisdiction is appropriate under subsections (1)(f)1 and (1)(b) of the Florida long-arm statute. *Fla. Stat. §§ 48.193(1)(f)1 and (1)(b).*

The Florida long-arm statute states, in pertinent part: "(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: . . . (b) Committing a tortious act within this state. . . .(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either: 1. The defendant was engaged in solicitation or service

activities within this state; or 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." *Fla. Stat. § 48.193*.

Plaintiff contends that subsection (1)(f)2 of the Florida long-arm statute applies to the Defendants because "[t]his case alleges $1,097,751.67 in damages . . . causing injury within the state of Florida, arising from Layne Gardner's and Metal Recovery's acts or omissions undertaken in contact with the forum State." *Id.* Plaintiff also implicitly invokes subsection (1)(f)1 by claiming the Florida long-arm statute "calls Defendants to be present in the forum state because of [Defendant's] solicitation to sell and deliver precious metal ore into Florida for purchase by the Florida Plaintiff from the out-of-state mines, and because of the subsequent injury that was caused within the state when test results demonstrated the ore to be virtually worthless." D.E. #27. In addition to economic injury, Plaintiff contends it has also shown "[o]re shipments, [o]re entrustment, Florida Based Equipment being sent out of the forum state, Defendant's offer to sign a 99 year lease at the fraudulently misrepresented 'Gardner Facility', and other contacts establishing Long Term Substantial Connections with the Forum State of Florida." D.E. #32.

To plead a prima facie case of specific jurisdiction under either part of subsection (1)(f) of the Florida long-arm statute, the Eleventh Circuit Court of Appeals and the Florida Supreme Court have held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction in Florida. *Rogers v. Nacchio*, 241 Fed. Appx. 602 (11th Cir 2007); *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.,* 511 So.2d 992, 994 (Fla. 1987). Plaintiff fails to allege physical injury or property damage within the state of Florida. Since Plaintiff has only alleged economic injury within the state of Florida and other contacts in Florida that do not amount to physical injury or property damage, this Court cannot exercise specific personal jurisdiction over the Defendants on the basis of either part of subsection (1)(f) of the Florida long-arm statute.

This Court also considers whether there is specific jurisdiction under subsection (1)(b) of the Florida long-arm statute. Plaintiff alleged that "injury . . . was caused within [Florida] when the test results demonstrated the ore to be virtually worthless." D.E. #27. Furthermore, Plaintiff alleged that the shipment of the ore to Florida was linked to the torts of conversion and the four types of fraud alleged in the Complaint. D.E. #1.

Assuming, arguendo, that the Defendants have engaged in some form of tortious activity, "for personal jurisdiction to attach under the 'tortious activity' provision of the Florida long arm statute, the Plaintiff must demonstrate that the nonresident Defendants 'committed a substantial aspect of the alleged torts in Florida' by establishing that the activities in Florida were 'essential to the success of the tort.'" *Cable/Home Communication Corp.*, 902 F.2d at 857 (11th Cir. 1990) (quoting *Watts v. Haun*, 393 So.2d 54, 56 (Fla.Dist.Ct.App. 1981)). Where no part of the alleged tortious activity occurs within Florida, Florida has no personal jurisdiction over the out-of-state defendants. *Freedom Sav. & Loan Ass'n v. Ormandy & Assocs.,* 479 So. 2d 316 (Fla. 5th DCA 1985)  In the present case, Plaintiff alleged that Defendants falsely proclaimed that the ore was worth $80,000 and that this induced Plaintiff to invest several hundred thousand dollars in capital improvements at Gardner's alleged California facility and to ship several hundred thousand dollars in proprietary equipment there. D.E. #1. Plaintiff also alleged that the Defendants sent the ore to Florida as a pretext for the tort of conversion. *Id.* Plaintiff, however, did not allege that Defendants committed any aspect of the alleged torts in Florida. Defendants' alleged false statement about the value of the ore sample, which is the basis for each type of fraud alleged in the complaint, was not alleged to have been made in Florida. That Plaintiff discovered the ore sample was "worthless" through a test conducted in Florida does not bring the alleged false statement about the value of the ore within Florida's borders. *See Musiker v. Projectavision*, 960 F. Supp. 292 (S.D. Fla. 1997) (Florida plaintiff did not have personal jurisdiction over defendant where defendant allegedly made fraudulent misrepresentations in telephone calls that were made primarily from New York). Moreover, the alleged conversion of Plaintiff's equipment all occurred in California and thus no part of the tort occurred within Florida. D.E. # 32, Aff. George Mesa ("my company's equipment is located at the 29 Palms facility in California."). Accordingly, this Court cannot exercise specific personal jurisdiction over the Defendants on the basis of subsection (1)(b) of the Florida long-arm statute.

   *(b) General Jurisdiction*

Plaintiff also contends that the Court has general jurisdiction over Defendants under subsection (2) of the Florida long-arm statute which states:  "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." *Fla. Stat. §§ 48.193(2).*

Plaintiff has provided no authority upon which its claims of general jurisdiction are based, but has alleged that "[t]he act of opening the doors to the allegedly owned real property to Floridians and equipment is a substantial activity because it compromised Lane Gardner's entire facility for their use to foster his fraudulent scheme, and his act of reaching into the Forum by shipping $80,000 worth of ore to Florida was not an isolated event, because it was part an aggregate of events which furthered a long-term relationship that Mr. Lane Gardner cultivated for the purpose of profiting from his Floridian guests." D.E. #32. This "aggregate of events" purportedly includes the California-based events described in the complaint (which are not reiterated herein) and the other Florida contacts that Plaintiff alleged, including "a series of Florida derived payments given to Defendants over a six (6) month period," Defendants' "solicitation to sell and deliver precious metal ore into Florida for purchase or sale by the Florida Plaintiff from the out-of state mines," that the equipment it sent to California was "Florida-based" and that the recovery system it set up in California was "Florida engineered." D.E. #27. Plaintiff also counts "Ore entrustment" and "Defendant's offer to sign a 99 year lease at the fraudulently misrepresented 'Gardner Facility'" as contacts with Florida. D.E. #32.

"Substantial and not isolated activity" has been found to mean "continuous and systematic general business contact" with Florida. See *Woods v Nova Cos. Belize Ltd.*, 739 So. 2d 617 (Fla. 4th DCA 1999) (quoting *Achievers Unlimited, Inc. v. Nutri Herb, Inc.*, 710 So. 2d 716, 720 (Fla. 4th DCA 1998) (internal citation omitted)). This "continuous and systematic" contacts standard was the standard enunciated by the Supreme Court in *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 415 (1984) as sufficient to fulfill the due process requirements of minimum contacts when asserting general jurisdiction. *Id.* Even assuming that the Defendants "opened the doors to the allegedly owned real property to Floridians," the real property was located within California. Thus, any dealings with the Floridian Plaintiff over this real property was directed towards California and was not alleged to be activity within Florida. While Defendants' shipment of ore to Florida and its entrustment was alleged to be activity within Florida, it cannot be considered a continuous and systematic contact with Florida even if it furthered a long-term relationship with Floridians because Plaintiff only alleged that Defendants asked Plaintiff to test one sample of ore in Florida. This is, by its very nature, an isolated activity. Last, that Plaintiff paid for services in California with funds from Florida, that it set up a recovery system in California with Florida engineered equipment, that Defendants offered to sell and deliver ore into Florida and that Defendants offered to lease property to Plaintiff in California, do not establish activity by the Defendants within Florida. The former two activities are by the Plaintiff (not by the Defendants)

and were directed towards California. The latter two activities describe statements made by the Defendants in California that never came to fruition within Florida or elsewhere. Therefore, none of these contacts allege activities within Florida that the Defendants engaged in. Plaintiff has thus failed to meet its initial burden of alleging facts that are sufficient to support a prima facie case of general personal jurisdiction.

In addition, Plaintiff has not refuted Defendants proffer that Defendants do not have a residence in Florida, that they own no real or personal property in Florida, have no facilities and/or offices in Florida, have never sold or leased any real or personal property in Florida, have never conducted any personal business within Florida and do not maintain bank accounts in Florida.

Accordingly, this Court cannot exercise general personal jurisdiction over the Defendants on the basis of subsection (2) of the Florida long-arm statute.

### 2. Federal Due Process Considerations

Having concluded that the exercise of jurisdiction in the present case is not appropriate under Florida's long-arm statute, the Court does not reach the second question of the personal jurisdiction analysis: whether such exercise comports with the requirements of the *Due Process Clause of the Fourteenth Amendment*.

### III.   Conclusion

For the reasons stated above, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED. This case is dismissed without prejudice. All pending motions are dismissed as moot. The Clerk shall close this case.

DONE and ORDERED in Chambers at Miami, Florida this 22th day of September, 2011.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record.